MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2021 ME 15
Docket:       Ken-20-322
Argued:       February 11, 2021
Decided:      March 25, 2021

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

TIMOTHY SILVA[1]

GORMAN, J.

[¶1]  Juvenile Timothy Silva appeals from a dispositional order imposed after an adjudication that he committed manslaughter, *see* 17-A M.R.S. § 203(1)(A) (2020), entered in the Juvenile Court[2] (Waterville, *Dow, J.*) based on Silva's admission to the charge.  Silva challenges the court's disposition committing him to detention at the Long Creek Youth Development Center for an indeterminate time not to extend beyond Silva's twenty-first birthday.  We affirm the disposition.

---

[1]  Although Silva is a juvenile, because Silva was charged with what would be a Class A crime if committed by an adult, *see* 17-A M.R.S. § 203(1)(A) (2020), and the general public was therefore permitted to attend the proceedings, *see* 15 M.R.S. § 3307(2)(A) (2020), we use Silva's full name.

[2]  When the District Court exercises its jurisdiction over juvenile offenses, it is referred to as the "Juvenile Court."  15 M.R.S. § 3101 (2020).

## I. BACKGROUND

[¶2]   On November 20, 2020, the court adjudicated Silva to have committed one count of manslaughter, *see* 17-A M.R.S. § 203(1)(A), based on Silva's admission to the charge.  From the State's recitation of the facts, the court determined that, in the early morning hours of February 9, 2020, Silva, who did not have a driver's license, took his mother's car without permission; picked up four other juveniles; and drove at eighty-five miles per hour in a forty-mile-per-hour zone before losing control of the vehicle.  *See* M.R.U. Crim. P. 11(b)(3), (e).  The resulting collision caused the death of three of the passengers and serious injuries to the fourth.  Silva was sixteen years old at the time, and the juveniles who died were twelve, fourteen, and fifteen years old.

[¶3]   In fashioning the disposition for these offenses, the court was provided with victim impact statements from the victims' families and friends; statements from Silva's family and friends; a letter from Silva's therapist; information from Silva's juvenile corrections officer; sentencing memoranda and presentations from the State and from Silva; and Silva's own statement. For the offense of manslaughter, the court committed Silva to Long Creek for an

indeterminate period up to Silva's twenty-first birthday.[3]   Silva appeals.[4]
*See* 15 M.R.S. § 3402(1)(B) (2020).

## II.  DISCUSSION

[¶4]  Silva asserts that his disposition is contrary to the purposes of the Maine Juvenile Code, 15 M.R.S. §§ 3001-3507 (2020).  We review an appeal from an order of disposition in a juvenile matter for "an abuse of discretion and 'errors in the application and interpretation of law,' 'to ensure substantial uniformity of treatment to persons in like situations,' and 'so that the legislatively defined purposes of the juvenile justice system as a whole are realized.'"  *State v. J.R.*, 2018 ME 117, ¶ 10, 191 A.3d 1157 (alterations omitted) (quoting 15 M.R.S. § 3401(2)) (citing 15 M.R.S. § 3402(1)(B)).

[¶5]  After entering an adjudication of a juvenile offense, the Juvenile Court is required to "hear evidence on the question of the proper disposition

---

[3]  In a related docket before the trial court (Kennebec County, *Dow, J.*), Silva pleaded guilty to criminal speeding (Class E), 29-A M.R.S. § 2074(3) (2020); operating without a license (Class E), 29-A M.R.S. § 1251(1)(A) (2020); and driving to endanger (Class E), 29-A M.R.S. § 2413(1) (2020), stemming from the same incident.  *See* 15 M.R.S. §§ 3101(2)(A), 3103(1)(A)(2020).  The court sentenced Silva to thirty days in jail for each of these three offenses, all to be served concurrent with the disposition for the manslaughter offense.  Although only the disposition as to the manslaughter offense is before us in this appeal, we note that, to the extent that the court ordered Silva to serve his thirty-day sentences at the Kennebec County Jail, generally, "[a] juvenile may not be committed to or detained or confined in a jail or other secure detention facility intended or primarily used for the detention of adults."  15 M.R.S. § 3205(1) (2020).

[4]  We denied Silva's motion for a stay of execution of his commitment to Long Creek and release pending appeal.  *See* 15 M.R.S. § 3402(4) (2020).

4

best serving the interests of the juvenile and the public." 15 M.R.S. § 3312(1).

The best interests of the juvenile and the public must be determined in light of

the express legislative goals of the juvenile justice system:

> **A.** To secure for each juvenile subject to these provisions such care and guidance, preferably in the juvenile's own home, as will best serve the juvenile's welfare and the interests of society;
>
> **B.** To preserve and strengthen family ties whenever possible, including improvement of home environment;
>
> **C.** To remove a juvenile from the custody of the juvenile's parents only when the juvenile's welfare and safety or the protection of the public would otherwise be endangered or, when necessary, to punish a child adjudicated, pursuant to chapter 507, as having committed a juvenile crime;
>
> **D.** To secure for any juvenile removed from the custody of the juvenile's parents the necessary treatment, care, guidance and discipline to assist that juvenile in becoming a responsible and productive member of society;
>
> **E.** To provide procedures through which the provisions of the law are executed and enforced and that ensure that the parties receive fair hearings at which their rights as citizens are recognized and protected; and
>
> **F.** To provide consequences, which may include those of a punitive nature, for repeated serious criminal behavior or repeated violations of probation conditions.

15 M.R.S. § 3002(1); *see* 15 M.R.S. § 3002(2) (directing that, "[t]o carry out these

purposes, the provisions of this Part shall be liberally construed").

[¶6]  This list of purposes requires the Juvenile Court to make difficult decisions based on goals that are almost certainly at odds.  Section 3002(1) sets out a clear legislative preference that a disposition provide the juvenile with "care and guidance" and that such care and guidance be provided "preferably in the juvenile's own home" rather than in a detention facility.  15 M.R.S. § 3002(1)(A).  To that end, the court is directed to "preserve and strengthen family ties," and it must consider how the juvenile's home environment may be improved.  15 M.R.S. § 3002(1)(B).  The statute reinforces those stated purposes by listing as the first of only two circumstances under which a child is to be removed from the child's home, "when the juvenile's welfare and safety or the protection of the public would otherwise be endangered."  15 M.R.S. § 3002(1)(C).

[¶7]  In the same sentence, however, the Legislature has placed on the court the responsibility to consider detention of the child "when necessary, to punish a child adjudicated, pursuant to chapter 507, as having committed a juvenile crime."  15 M.R.S. § 3002(1)(C).  Finally, section 3002(1) allows the court to make provisions for the "treatment, care, guidance and discipline" of a juvenile removed from the home.  15 M.R.S. § 3002(1)(D).  In sum, the court

must balance the "juvenile's welfare" and the "interests of society" in fashioning a disposition. 15 M.R.S. § 3002(1)(A).

[¶8] In service of both the preference for juveniles to remain in the home and the concomitant recognition of the propriety of institutional detention in some circumstances, the Legislature has further directed that the court may order detention of a juvenile when "confinement of the juvenile is necessary for the protection of the public" because one or more of the following criteria are met:

> **A.** There is undue risk that, during the period of a suspended sentence or probation, the juvenile will commit another crime;
>
> **B.** The juvenile is in need of correctional treatment that can be provided most effectively by the juvenile's commitment to an institution; or
>
> **C.** A lesser sentence will depreciate the seriousness of the juvenile's conduct.

15 M.R.S. § 3313(1). The statute directs the court to consider a list of eleven factors when making this determination, including whether the juvenile "caused [or] threatened serious harm," whether the juvenile "contemplate[d] that the juvenile's conduct would cause or threaten serious harm," and whether

"[t]here were substantial grounds tending to excuse or justify the juvenile's conduct."[5]  15 M.R.S. § 3313(2)(A), (B), (D).

[¶9]    Given the sometimes opposing purposes imposed by the Legislature, a disposition can be imposed only after a case-specific analysis that includes a thoughtful and thorough consideration of the facts and the law by the juvenile court. *See* 15 M.R.S. §§ 3312-3314; *J.R.*, 2018 ME 117, ¶¶ 18-19, 23, 27, 191 A.3d 1157.  Although rehabilitation is a primary purpose of the juvenile justice system, *J.R.*, 2018 ME 117, ¶¶ 14, 22, 191 A.3d 1157, punishment is not precluded.  In fact, punishment is expressly authorized upon commission of a juvenile crime, as Silva has admitted to having committed, *see* 15 M.R.S. §§ 3002(1)(C), 3313(1)(C); *J.R.*, 2018 ME 117, ¶ 23, 191 A.3d 1157, and the statute allows such punishment to occur while the juvenile either stays in his home or is detained, among a host of other dispositional alternatives, 15 M.R.S. § 3314(1).  In *J.R.*, for example, we affirmed the court's commitment of a juvenile to a detention facility for an indeterminate period up to his eighteenth birthday

---

[5]  If it elects to commit a juvenile to a detention facility, the court must then make additional findings regarding whether "reasonable efforts have been made to prevent or eliminate the need for removal of the juvenile from the juvenile's home or that no reasonable efforts are necessary because of the existence of an aggravating factor . . . , and whether continuation in the juvenile's home would be contrary to the welfare of the juvenile."  15 M.R.S. § 3314(1)(F) (2020).

for the juvenile's commission of two counts of criminal mischief and three counts of theft. 2018 ME 117, ¶¶ 1, 27, 191 A.3d 1157.

[¶10] It is the third criterion in section 3313(1) on which the court here based its decision to commit Silva to a detention facility. *See* 15 M.R.S. § 3313(1)(C). It concluded that Silva's confinement was "necessary for the protection of the public because a lesser sentence will depreciate the seriousness of the juvenile's conduct." In its analysis, the court noted that Silva's conduct led to the deaths of three children, two of whom were siblings. The court also determined, based on Silva's own statement, that Silva did not adequately demonstrate that he had accepted responsibility for his conduct and instead believed that the victims shared in the blame for the collision. The court expressly considered Silva's compliance with his pre-adjudication conditions of release; his lack of a prior juvenile or criminal record; each of the factors in section 3313(2); and the characteristics of the juvenile brain, *see Miller v. Alabama*, 567 U.S. 460, 471-72 (2012); *Graham v. Florida*, 560 U.S. 48, 68-74 (2010); *Roper v. Simmons*, 543 U.S. 551, 569-73 (2005); *see also J.R.*, 2018 ME 117, ¶ 32 n.10, 191 A.3d 1157 (Saufley, C.J., concurring). The court then made the requisite findings that reasonable efforts were made to prevent or eliminate the need for removing Silva from his home. *See* 15 M.R.S. § 3314(1)(F). In short,

the court engaged in an analysis that complied with both the letter and the spirit of the Juvenile Code.

[¶11] Whether to detain this juvenile was an exceedingly difficult decision. The court was required to simultaneously consider the juvenile's interests, the public's interests, and the victims' interests, knowing that whatever disposition it fashioned would neither heal the pain of the victims' loved ones nor turn back the clock for Silva, whose life will also be forever changed by his actions. *See* 15 M.R.S. § 3002(1)(A), (C). Here, the court used the proper statutory process, considered the factors it was bound to consider, applied the analysis it was required to apply, issued the requisite findings based on evidence properly presented at the dispositional hearing, and made an informed decision that complied with the purposes of the Juvenile Code. Given our deferential review, we cannot say that the court's disposition, although imposing the maximum allowable institutional detention, was either error or an abuse of discretion. *See* 15 M.R.S. §§ 3316(2)(A), 3402(1)(B); *J.R.*, 2018 ME 117, ¶ 10, 191 A.3d 1157.

The entry is:

Disposition affirmed.

Walter F. McKee, Esq., and Kurt C. Peterson, Esq. (orally), McKee Law, LLC, P.A., Augusta, for appellant Timothy Silva

Maeghan Maloney, District Attorney, and Carie James, Asst. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Waterville District Court docket number JV-2020-14
FOR CLERK REFERENCE ONLY